## CHASE *vs.* STEVENS.

The plaintiff sued out a writ against his debtor and put the same into the hands of the defendant, an officer, for service. The defendant attached property, the plaintiff agreeing to take charge of the defence of the replevin suit should one be commenced. The property was replevied. The plaintiff took upon himself the defence of the replevin suit — succeeded, and had judgment for a return. But the principal and surety in the replevin bond proving to be insolvent, and the goods replevied not to be found, the defendant commenced an action against the replevying officer for taking insufficient sureties, in which he was defeated, the jury finding that they were sufficient at the time of the taking. *Held* that, under these circumstances, the defendant was not liable to the plaintiff for the property thus attached and lost.

It is no part of the duty of an officer from whom goods are replevied to see that the sureties in the replevin bond are sufficient; nor can he lawfully resist the writ of replevin on such ground.

THIS was an action of the case against the defendant as a Coroner, for neglecting to take and sell on an execution in favor of the plaintiff, against one *Edward March*, sundry goods and chattels which had been attached by the said *Stevens* on the original writ. The general issue was pleaded accompanied by a brief statement.

On trial before *Parris J.*, Nov. term, 1833, it appeared in evidence that, on the 10*th* of *January*, 1829, the plaintiff sued out a writ against the said *March*, returnable to the then next term of the Court of Common Pleas in the County of *Oxford*, and delivered it to the defendant for service, who returned on the 24*th* of *February*, 1829, that he had attached sundry goods and chattels in the return particularly specified, as the property of said *March*; that the plaintiff recovered judgment in his said writ against said *March* on the 4*th Tuesday* of *January*, 1830, and within thirty days thereafter delivered his execution issued on said judgment to the defendant, with directions to levy the execution on the property attached; which the defendant never did, but returned on the 12*th* of *February*, 1830, that, he had demanded the property of *George Small*, and that he had refused to deliver it.

On the 25*th* of *February*, 1829, one *John Hale* sued out a writ of replevin in due form against the defendant, wherein the

officer was directed to replevy the property attached on the plaintiff's writ against *March,* out of the hands and possession of the defendant, and the same property to deliver to *Hale,* the plaintiff in replevin; which writ of replevin was, on the same day, put into the hands of one *George Small,* an officer duly authorised, for service, who on the same day, by virtue thereof, took from the hands and possession of the defendant, the goods and chattels by him attached, on the plaintiff's writ against *March,* and delivered the same to the said *Hale,* at the same time taking a bond, signed by the said *Hale* as principal, and one *David Jones* as surety, as required in the writ of replevin; — that such proceedings were had in the replevin suit, that, at the term of this Court, holden the 1st Tuesday of *Nov.* 1832, the said Stevens recovered judgment against the said *Hale,* for a return of the goods and chattels replevied, and for his damages and costs, and a writ of return was duly issued on said judgment, *Dec.* 24, 1832, and put into the hands of *David Wescott,* a Coroner of said County, for service, who made return on the 16*th* of *April,* 1833, that he had made diligent search for the goods and chattels within specified, and could not find them, and therefore could not cause a return to be made, neither could he find the said *Hale,* or any property of his, wherewith to satisfy the damages and costs.

It further appeared that, on the 21*st* of *October,* 1833, the defendant commenced his action against the said *Small,* for taking insufficient sureties on the replevin bond, in the said suit against the defendant, in favor of *Hale,* and prosecuted the same to trial; but that, on the trial thereof, the jury found that the surety was sufficient at the time of the execution of the bond, and that the said *Small* had reason to suppose that he would continue sufficient until the termination of the replevin suit.

To all this evidence relating to the replevin suit, the taking of the property attached on the plaintiff's writ against *March,* out of the defendant's hands and possession, by *Small,* and the defendant's suit against *Small,* for taking insufficient sureties on the replevin bond, the plaintiff objected as irrelevant, but *Parris J.* admitted it, and instructed the jury that, if from other evidence offered in the case, they were satisfied that *Hale* and *Jones,* the principal and surety on the replevin bond, were insolvent at the

time when the defendant became entitled to maintain a suit on said bond, and that they had not then, or at any time since, any property by law liable to attachment, so that by a suit on said bond, the defendant could not have availed himself of any property, to apply to the satisfaction of the plaintiff's execution against *March*, their verdict should be for the defendant. But if *Hale* and *Jones*, or either of them, had property which could have been attached, at the time when the defendant could have legally commenced a suit on the replevin bond, or at any time thereafter and before the commencement of this. action, then it was the duty of the defendant to have secured such property by attachment on a writ on the replevin bond, and their verdict should be for the plaintiff to the amount of what might thus have been secured.

It appeared that *Hale* failed in business and became notoriously insolvent, in 1830, and was not known to have had any attachable property subsequent to that time; but that *Jones* was the owner of one third of a brig, which was sold by him on the 14*th* of *November*, 1832; and it did not appear that he had any attachable property subsequent to that time.

In regard to the question, at what time the defendant could have legally commenced an action on the replevin bond, it appeared that, the term of this Court at which the replevin suit was determined, commenced on the 6*th* of *November*, 1832, and that on the Clerk's docket, under that action, were the following entries: "Plaintiff discontinues 1st day. Costs and a return ordered. Continued nisi. Plaintiff to be heard in taxation of costs. Judgment, *Dec.* 17, 1832. Damages $63,12. Costs $60,93."

The jury found that *Jones* had available property to the amount of $400, up to the 14*th* of *December*, 1832, but none afterwards; and that *Hale* had none then or at any time since.

It was admitted that, previous to the commencement of this action, the defendant tendered to the plaintiff's attorney, an instrument assigning to the plaintiff the replevin bond, and authorising him to prosecute the same for his sole use and benefit, in the defendant's name; which he declined accepting.

The defendant proved, that he was reluctant to make the attachment on the original writ in favor of the plaintiff, against

Chase *v*. Stevens.

*March*, being apprehensive that the property would be replevied; that, the said Chase, through his attorneys thereto authorised, engaged that in case the property should be replevied, he, the said *Chase*, would take upon himself the defence of the replevin suit; and that, in pursuance of said engagement, he did procure counsel to defend that suit, and took upon himself the sole and entire management of the defence; and the defendant contended that if it was his duty at all to prosecute the replevin bond, which he denied, it was not his duty so to do until the said *Chase* had procured a judgment for a return of the goods and chattels replevied, and notified him of that fact, and requested him to pursue the remedy on the replevin bond.

A verdict was taken *pro forma* for the plaintiff, subject to the opinion of the whole Court upon the report of the case.

*N. Emery* argued the case for the defendant, and cited *Gibbs v. Bull*, 18 *Johns.* 435; *Ladd v. North*, 2 *Mass.* 514; 2 *Ld. Raym.* 530; *Buller's N. P.* 243; 5 *T. Rep.* 256; 10 *Johns.* 587: *Kindel v. Blake*, 5 *Taunt.* 225; *Rice v. Hosmer*, 12 *Mass.* 127.

*Longfellow*, for the plaintiff.

The defendant, as an officer, had a writ against *March* — he made an attachment of sufficient property to have satisfied the debt due to the plaintiff — he is liable for it, if it were the property of the debtor, unless he be relieved by the act of God, or the public enemy. It is matter of policy in the law to prevent collusion between him and the debtor; — and in consequence of this he acquires a special property in the goods attached, a property that neither the creditor or debtor can interfere with. *Ladd v. Blunt*, 4 *Mass.* 402.

It is insufficient for the officer to say that the property has been taken out of his hands by a writ of replevin, unless it appear that the plaintiff in replevin succeeded.

If property be taken from an officer by replevin, he has his remedy on the replevin bond — it is the security of the officer, and not of the creditor — the latter has nothing to do with it — the creditor looks to the officer, and the latter to his replevin bond.

The language of the statute, it is admitted, is " sufficient surety or sureties." So was the language of the English statute of bail, and yet if an officer took but *one surety,* who though good at the time, afterward turned out to be otherwise, the officer was held liable. We contend for the same doctrine here. In all cases it it is the duty of the sheriff to satisfy himself of the sufficiency of the bond — the law invests him with power to do this — if the coroner do not furnish such a bond, the officer will decline giving up the property attached. The case of *Ladd* v. *North,* which is similar to this, is confirmed by *Phillips* v. *Bridge,* 11 *Mass.* 247; *Tyler* v. *Ulmer,* 12 *Mass.* 163.

The defendant is further liable, because he did not commence a suit on the replevin bond on the *6th* day of *November,* as he might, when the surety in the bond had property which could have been attached.

The case against *Small,* was not admissible evidence in this case, because it was between other parties — there was no privity on the part of the present plaintiff.

WESTON J. delivered the opinion of the Court at the ensuing *April* term in *York.*

A verdict has been returned in favor of the plaintiff, subject to the opinion of the Court, grounded upon an alleged failure of duty in the defendant, in his official capacity. He attached certain goods at the suit of the plaintiff, as the property of his debtor, *March.* These goods were replevied by *John Hale,* in due course of law, who claimed them as his property. The officer, who was charged with the service of the writ of replevin, was bound to execute it, provided the plaintiff in that writ gave bond, with sufficient surety or sureties, to the defendant, conditioned as the law directs. It was the business of the officer, having the replevin writ, to determine at his peril, whether the condition upon which he was to proceed, had been complied with. He was then to act; and his authority could not lawfully be resisted. It was not for the defendant to refuse to submit to the writ of replevin, on account of the alleged insufficiency of the bond. That would have occasioned an unseemly contest between different officers of the law, tending to bring its authority into contempt.

The responsibility as to the sufficiency of the bond, did not rest upon the defendant, but upon the officer serving the replevin. He was held liable to respond in damages, if he presumed to receive a bond, which was not sufficient.

In yielding to the replevin then, the defendant did not violate, but fulfilled his duty. The defendant must be held justified, for yielding to the requirements of law. In receiving the bond, and defending against the suit in replevin, the defendant acted in trust for the plaintiff, the attaching creditor, to whose use, the damages recovered by the defendant, by law enured. *Revised Laws, ch.* 80, *sec.* 4. The suit brought by *Hale*, was defended with vigilance and with success. *Hale* discontinued that suit on the sixth of *November*, 1832, being the first day of the term. The minute on the docket of that day is, " costs and a return ordered, continued nisi, plaintiff to be heard in the taxation of costs." A further entry on the docket is, " judgment, *December* 17, 1832." Taking the entry together, we must understand that upon the discontinuance, the defendant moved for a return and costs, and the order of that day indicated, that such was to be the judgment, when rendered. The Court did not then render judgment, but continued the cause. The plaintiff was to be heard in the taxation of costs, and time was necessary for that purpose. It does not appear, that the defendant did not move for final judgment as speedily, as the pressure of business before the Court, would admit.

The obligation to return the goods replevied, or to pay the costs was not fixed upon the plaintiff in that suit, or his surety, until it was awarded by the judgment of Court. He was to pay such damages and costs, as the defendant might recover against him, and return the goods, if such should be the final judgment of the court. Until judgment therefore, the replevin bond could not be put in suit. And the case finds that any attempt to proceed with it afterwards, would have been altogether fruitless. Indeed, according to the case of *Ladd* v. *North*, 2 *Mass.* 514, the bond could not have been sued until a later period. *Parsons C. J.* there says, " if the *retorno habendo* was returned unsatisfied, he (the sheriff or his deputy) might obtain indemnity by action on the replevin bond ; or, if the pledges were insufficient, by suit against

the coroner." And this he held to be the common law here, as well as in England.

Whether the defendant was bound, acting in trust, to sue the coroner for the insufficiency of the bond, we need not decide. He did so, and in so doing, proceeded with fidelity for the benefit of the plaintiff. If it was a part of his duty, he had a right to prove its performance; if not, as a measure prosecuted in behalf of the plaintiff, it was properly received in evidence; as was the replevin itself and its termination. It was involved in the issue, charging the defendant with a failure of duty, and was necessary for his justification. Indeed, from beginning to end, the defendant appears to have maintained the character of a vigilant and faithful officer. If by great diligence, of which there is no sufficient evidence, the defendant might have obtained judgment against *Hale*, prior to the fourteenth of *November*, when his surety parted with his last property, and if the bond might before that have been put in suit, which is not admitted, the plaintiff, and not the defendant, is chargeable with negligence. In pursuance of a previous agreement, the plaintiff took upon himself the whole charge and management of the replevin suit. If final judgment was not obtained, as speedily as it might have been, the fault was his. In whatever point of view we regard it, there does not appear the least pretence for maintaining the action; and the verdict is accordingly set aside.

*Plaintiff nonsuit.*